## A03A0799. STEARNES v. THE STATE.
(583 SE2d 195)

RUFFIN, Presiding Judge.

Following a bench trial, the trial court found Truman Bradley Stearnes guilty of driving under the influence of alcohol, speeding, and failure to maintain a lane. On appeal, Stearnes challenges the sufficiency of the evidence and the trial court's denial of his motion to suppress. Finding no error, we affirm.

1. In reviewing a defendant's challenge to the sufficiency of the evidence, "we view the evidence in a light most favorable to support the verdict, and the appellant no longer enjoys the presumption of innocence."[1] Moreover, we do not weigh the evidence or assess witness credibility, but determine whether a rational trier of fact could have found all the elements of the crime present beyond a reasonable doubt.[2]

> Conflicting testimony is a matter of credibility for the finder of fact to resolve. As long as some competent evidence exists, even though contradicted, to support each fact necessary to make out the State's case, we will uphold the factfinder's verdict.[3]

Viewed in this light, the evidence shows that on February 28, 2002, Stearnes left a bar sometime after midnight in his white pickup truck. Officer Merchant of the Gwinnett County Police Department observed Stearnes driving ahead of him and suspected Stearnes was speeding. Using his radar and his speedometer, Officer Merchant determined Stearnes was traveling at a speed of 59 mph in a 45-mph zone. He also observed Stearnes' vehicle cross over the centerline, then jerk back into its proper lane, and make a sudden lane change.

Based on Stearnes' speeding and erratic driving, Officer Merchant stopped Stearnes. As he approached Stearnes' vehicle, Officer Merchant saw Stearnes talking on a cell phone. Officer Merchant, who has specialized DUI training, also noticed that Stearnes' eyes were red and his speech was slurred. Additionally, Officer Merchant detected a strong odor of alcohol on Stearnes' breath and observed Stearnes exit from his vehicle in a slow and unsteady manner. Merchant also spotted a clear glass with ice cubes between the driver and passenger seats. Merchant testified the glass

---

[1] *Fairbanks v. State*, 244 Ga. App. 123 (534 SE2d 529) (2000).

[2] See *Jarriel v. State*, 255 Ga. App. 305, 306 (1) (565 SE2d 521) (2002).

[3] (Punctuation omitted.) *Childress v. State*, 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001).

smelled of alcohol and confirmed that it contained liquor using an alcohol-sensing flashlight.

The officer asked Stearnes to perform certain field sobriety tests, and Stearnes agreed. During the horizontal gaze nystagmus test, Stearnes alerted to all six "clues" indicating alcohol impairment. Stearnes was also unable to successfully perform either the "walk-and-turn" test or the one-leg stand. And, when he blew into the Alco-Sensor, it registered positive for alcohol.

Based on Stearnes' driving, his physical manifestations, and the results of the field sobriety evaluations, Officer Merchant determined he was under the influence of alcohol to the extent that he was less safe to drive. Officer Merchant placed Stearnes under arrest and then immediately read him the Georgia implied consent warning. Stearnes responded by refusing to take a blood alcohol test.

Stearnes testified that he consumed only two alcoholic drinks that evening. He maintained the cup found by Officer Merchant in his truck contained orange juice, which he drank that morning on his way to work. Stearnes' girlfriend also testified. She was at the bar with Stearnes on the evening in question, but admitted Stearnes was still inside with his friend Cravens when she left at around 11:00 p.m. According to Cravens, Stearnes did not appear drunk when he left the bar. Cravens admitted, however, that he did not continually observe Stearnes that evening.

The State submitted Officer Merchant's tape of the traffic stop into evidence at trial, which we have reviewed. Officer Merchant admits he did not tape his pursuit of Stearnes, which lasted some two miles, and therefore did not capture Stearnes' erratic driving and speeding on tape. He testified that he began taping the incident after he had activated his blue lights and conceded Stearnes was driving normally at that point.

"In Georgia, it is unlawful for a person to drive a car while under the influence of alcohol to the degree that it is less safe for that person to drive."[4] Moreover, the refusal to submit to a blood alcohol test can create an inference that the test would reveal the presence of a prohibited substance and bears directly on the issue of the sufficiency of the evidence.[5] Considering Stearnes' erratic driving, the physical manifestations indicating the presence of alcohol, his performance on the field sobriety evaluations, and his refusal to submit to blood alcohol testing, there was sufficient evidence for a rational trier of fact to

---

[4] *Kelly v. State*, 242 Ga. App. 30, 31 (1) (528 SE2d 812) (2000); see also OCGA § 40-6-391 (a) (1).

[5] See *Fairbanks*, supra at 124.

find Stearnes guilty beyond a reasonable doubt of driving under the influence.[6] To the extent that Officer Merchant, Stearnes, his girl-friend, and Cravens gave conflicting testimony, the trial court resolved these credibility issues in favor of the State, as it was authorized to do.[7] We find no error.

2. Stearnes asserts the police lacked any basis to effectuate a traffic stop and alleges the officer's failure to issue him citations for speeding and improper lane change gives rise to an inference that Stearnes was targeted for the sole reason that he was spotted leaving a bar.[8] We disagree.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.[9]

"In order to justify stopping a car, an officer must have specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct."[10] A suppression motion arguing that a traffic stop was pretextual necessarily fails where an officer observes the motorist committing even a minor traffic violation.[11] Applying those principles, we find Officer Merchant had reasonable articulable suspicion to stop Stearnes based on his speeding and failure to maintain a lane.[12]

Stearnes takes issue with the fact that the tape submitted by the State did not capture him speeding or driving erratically. Conflicting testimony presented by the State and Stearnes regarding the manner in which he was driving prior to the stop was a credibility matter for the factfinder to resolve.[13] We also find unconvincing Stearnes' argument that the officer's failure to issue traffic citations for speeding and failure to maintain a lane renders the stop pretextual. An officer's failure to issue traffic citations for violations prompting the

---

[6] See *Kelly*, supra; see also *Fairbanks*, supra at 125 (2).

[7] See *Kelly*, supra.

[8] Officer Merchant denied that he saw Stearnes leave the bar's parking lot, testifying instead that he first spotted Stearnes driving on the road.

[9] (Punctuation omitted.) *State v. Harris*, 236 Ga. App. 525 (1) (513 SE2d 1) (1999).

[10] Id. at 526.

[11] Id. at 527; see also *State v. Bowen*, 231 Ga. App. 95 (498 SE2d 570) (1998) (traffic stop authorized where officer observes motorist weaving from her lane to the curb lane).

[12] See id.

[13] See *Childress*, supra at 874 (1).

stop has no bearing on the stop's validity.[14] Accordingly, the trial court properly denied Stearnes' motion to suppress.[15]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 5, 2003.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.

*Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Assistant Solicitor-General*, for appellee.

---

[14] *State v. Adams*, 186 Ga. App. 87, 88 (366 SE2d 326) (1988).

[15] See *Roberts v. State*, 242 Ga. App. 120-121 (527 SE2d 617) (2000).