A09A0609. JACKSON v. THE STATE.

(677 SE2d 782)

MIKELL, Judge.

The trial court denied Lamario Danielle Jackson's motion to suppress evidence obtained during a search of his person after his vehicle was stopped. Jackson was then convicted at a bench trial of possession of less than one ounce of marijuana. On appeal, Jackson contends that the trial court erred in denying his motion to suppress because the arresting officer lacked a reasonable articulable suspicion of criminal activity to justify the stop of his vehicle. As the trial court concluded otherwise based on findings of fact that are supported by the evidence, we disagree with Jackson and affirm the trial court.

At a hearing on a motion to suppress, the trial judge sits as the trier of fact.[1] "And Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness."[2] "Thus, on appellate review of a trial court's order on a

---

[1] *State v. Sanders*, 274 Ga. App. 393 (617 SE2d 633) (2005).

[2] *Robinson v. State*, 295 Ga. App. 136, 139 (670 SE2d 837) (2008) (Mikell, J., concurring specially). Accord *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994) ("[c]redibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely

616

motion to suppress evidence, we never second-guess the trial court's factual findings where they are based on testimonial evidence."[3]

Viewed in the light most favorable to the trial court's ruling that the stop was lawful,[4] the evidence adduced at the suppression hearing shows that Athens-Clarke County Police Officer Juan Guardado was patrolling Mitchell Bridge Road in his vehicle on August 14, 2007, when he heard music coming from either a convenience store or gas station, both of which were over one hundred feet away. As he kept driving, Guardado determined that the music was emanating from a car parked at the convenience store. The vehicle was unoccupied, and its windows were down. As Guardado was parking, he saw a man, later identified as Jackson, enter the vehicle and start to back it up. Guardado exited his vehicle and asked Jackson to stop. Guardado asked Jackson why the music was so loud, but Jackson denied that the music was loud. Guardado also testified that he smelled a strong odor of marijuana coming from the vehicle as he spoke to Jackson. Guardado asked Jackson whether he had anything illegal in his car, and Jackson replied that he had Lortab in his pocket. The drug was not in a container. Jackson also admitted that he had smoked marijuana 20 minutes earlier. Guardado observed that Jackson's eyes were red and bloodshot, and Guardado asked him to get out of his car.

Guardado searched Jackson, discovering a small plastic bag containing marijuana, ten white Lortab pills, and some cash. Guardado placed Jackson under arrest and then searched his vehicle. Jackson was charged with possession of hydrocodone, criminal use of an article with an altered identification mark, possession of less than one ounce of marijuana, and violating OCGA § 40-6-14 (a), which makes it a misdemeanor for anyone "operating or occupying a motor vehicle on a street or highway" to operate a sound-making device in a car "so that the sound is plainly audible at a distance of 100 feet or more from the motor vehicle." The state dismissed all charges except possession of marijuana, of which Jackson was convicted.

"An officer may stop a car to conduct a brief investigation if specific, articulable facts give rise to a reasonable suspicion of criminal conduct."[5] In this case, the trial court determined that the

---

with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony") (citation and footnote omitted). Compare *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004) (de novo review proper where trial court accepted officer's version of events but applied incorrect standard of law).

[3] (Footnote omitted.) *State v. Guyton*, 295 Ga. App. 786, 787 (673 SE2d 290) (2009).

[4] See *Veal v. State*, 273 Ga. App. 47, 48 (614 SE2d 143) (2005).

[5] (Footnote omitted.) *Lough v. State*, 276 Ga. App. 495, 498 (1) (623 SE2d 688) (2005). See also *Terry v. Ohio*, 392 U. S. 1, 21 (III) (88 SC 1868, 20 LE2d 889) (1968).

stop was lawful because the officer had a reasonable suspicion to believe that Jackson was operating his vehicle in violation of OCGA § 40-6-14 (a). Jackson argues that this ruling is erroneous because the officer did not "witness" his car playing loud music on a street or highway. We disagree.

OCGA § 40-6-3 (a) (2) states that "[t]he provisions of this chapter shall apply to a vehicle operated at shopping centers or parking lots or similar areas which although privately owned are customarily used by the public as through streets or connector streets." Here, it was reasonable for the officer to believe that OCGA § 40-6-14 (a) applied to the parking lot of the convenience store/gas station where Jackson's vehicle was parked, and the officer's investigatory stop of Jackson's vehicle was justified by a reasonable suspicion that he was operating his vehicle in violation of that Code section.[6]

Jackson also argues that the stop was invalid because the music emanating from his vehicle did not meet the definition of "plainly audible" set forth in regulations promulgated by the Department of Public Safety. According to the regulations,

> "[p]lainly audible" shall mean any sound produced by a sound amplification system from within a motor vehicle which can be heard from a distance of 100 feet or more, . . . [as measured] by the auditory senses, based on direct line of sight, from a distance of 100 or more feet from the vehicle.[7]

Jackson contends that the music was not "plainly audible" because his vehicle was not in the officer's direct line of sight when the officer was 100 feet away. The fact that the officer may have been mistaken about the requirements of the offense does not invalidate the stop, however, because "[w]e have rejected the notion that the officer must know that each 'element' of a crime could be established prior to initiating a stop."[8]

> If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defen-

---

[6] See *Hayward-El v. State*, 284 Ga. App. 125, 128 (3) (643 SE2d 242) (2007) (traffic stop justified because officer perceived that appellant was violating a local noise ordinance); *Biffle v. State*, 214 Ga. App. 641, 642 (448 SE2d 749) (1994) (traffic stop lawful because officer observed the car being operated in violation of OCGA § 40-6-14); *Freeman v. State*, 195 Ga. App. 357, 358 (1) (393 SE2d 496) (1990) (traffic stop valid because officer heard and observed appellant driving car in violation of local noise ordinance).

[7] Ga. Comp. R. & Regs. rr. 570-29-.02 (1), 570-29-.03 (a) (2009).

[8] (Footnote omitted.) *State v. Bute*, 250 Ga. App. 479, 481 (552 SE2d 465) (2001).

dant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.[9]

As stated above, the arresting officer had a reasonable suspicion that Jackson was operating his vehicle in violation of OCGA § 40-6-14 (a), which applies to parking lots under OCGA § 40-6-3 (a) (2). "When no error of law appears on the record, and the trial court's ruling is based on the credibility of the oral testimony presented at the hearing, we must leave the decision to the trial judge as the trier of fact."[10]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED APRIL 23, 2009 

*Dustin K. Kirby*, for appellant.
*Kenneth W. Mauldin, District Attorney, William M. Olson, Assistant District Attorney*, for appellee.

---

[9] (Citation omitted.) *State v. Rheinlander*, 286 Ga. App. 625, 626 (649 SE2d 828) (2007).
[10] (Punctuation and footnote omitted.) *Guyton*, supra.
[1] OCGA § 16-5-21 (a) (2), (3).
[2] OCGA § 16-5-24 (a).
[3] OCGA § 16-5-23 (a) (1).
[4] Former OCGA § 16-15-4 (a) (2005); Ga. L. 1998, p. 270, § 8.