DECIDED DECEMBER 28, 2011.

*Jonathan P. Waters*, for appellant.
*Sherwin P. Robin*, for appellee.

### A11A1782. HILBUN v. THE STATE.
(721 SE2d 656)

MIKELL, Chief Judge.

This Court granted Amber Hilbun's application for interlocutory appeal to determine whether the trial court correctly denied her motion to suppress by concluding that the officer had a reasonable, articulable suspicion for detaining her. For the reasons set forth below, we affirm.

> At a hearing on a motion to suppress, the trial judge sits as the trier of fact. And Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness. Thus, on appellate review of a trial court's order on a motion to suppress evidence, we never second-guess the trial court's factual findings where they are based on testimonial evidence. We construe the evidence most favorably to the upholding of the trial court's findings and judgment and affirm unless the court has committed an error of law.[1]

Here, the trial court found that, on April 14, 2010, at the request of parole officers, Sergeant Christopher Brewer, a supervisor of the Narcotics Unit of the Laurens County Sheriff's Department, took part in a search of parolee John Shillingburg's residence in Laurens County.[2] Several other officers also participated in the search and, according to Hilbun, at least four police vehicles arrived at the residence. When Brewer arrived, he saw a vehicle parked in front of the house with two passengers, but no one in the driver's seat. Two other officers went to the vehicle and began questioning its occupants. While Brewer was standing in the door of Shillingburg's single wide trailer, he learned that Amber Hilbun, who was inside the

---

[1] (Punctuation and footnotes omitted.) *State v. Rowell*, 299 Ga. App. 238, 238-239 (682 SE2d 343) (2009).

[2] Although the trial court's order refers to a "parole search warrant," there is no warrant in the record before us, and Brewer did not testify there was a warrant. This, however, does not affect our analysis. See generally *Thomas v. State*, 287 Ga. App. 163 (651 SE2d 116) (2007) (discussing Fourth Amendment waiver as a condition of parole).

trailer, had been the driver of the vehicle. He asked her to step outside of the residence and talk to him, and they walked 20 to 30 feet to the edge of the driveway. Brewer asked Hilbun her name, and she initially gave him a false name. Because Brewer was aware that Shillingburg was known for dealing narcotics, he asked Hilbun if she were present to buy marijuana and asked her the identity of the two passengers in her car. Although she described the male occupant as her boyfriend, Hilbun could not remember his name. She did, however, identify the female occupant. Brewer then asked if he could search her, and Hilbun emptied her pockets of ten tan and blue pills suspected to contain hydrocodone, a Schedule III substance. Although Hilbun first said the pills were hers, she then told Brewer that she was there to sell the pills to Shillingburg.

> United States Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry*[3] stop of a citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.[4]

The state argues that the trial court incorrectly found this to be a second tier encounter. The trial court's finding, however, is supported by evidence and is not clearly erroneous.[5] Hilbun testified that four police cars containing numerous officers arrived; she was told to go outside by a uniformed armed officer; the passengers in her

---

[3] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[4] (Citations, punctuation and footnotes omitted.) *Holmes v. State*, 252 Ga. App. 286, 287-288 (556 SE2d 189) (2001).

[5] *Boykins v. State*, 307 Ga. App. 404, 406 (1) (705 SE2d 186) (2010) ("Whether police-citizen contact qualifies as a first-tier encounter is a mixed question of fact and law, and we will uphold the trial court's findings of fact if there is any evidence to support them.") (footnote omitted).

car were outside the car being questioned by officers; and she felt she could not decline the instruction to go outside and did not feel like she could leave.

The remaining inquiry is whether Brewer had a particularized and objective basis for suspecting that Hilbun was involved in criminal activity at the time he told her to leave the residence and talk to him. We find that he did. Brewer was aware that Shillingburg was known for dealing narcotics from a number of prior cases he had personally worked on, and Brewer believed that Hilbun was there to buy marijuana. Further, when asked for identification, Hilbun did not have any on her and, initially, gave Brewer a false name. Also, she could not identify the man in the car with her, although she said he was her boyfriend.

"The determination of whether articulable suspicion exists must depend upon all the circumstances gathered from objective observations and the modes or patterns of operation of certain kinds of lawbreakers."[6]

> The trained police officer makes a determination . . . based upon inferences and deductions that might well elude an untrained person. In reaching such deductions, police officers are authorized to make common sense conclusions about human behavior. Additionally, the evidence must be viewed from the perspective of what action a reasonable police officer would take.[7]

Therefore, we conclude that the evidence provided sufficient reasonable articulable suspicion to support a brief detention of Hilbun.[8]

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED DECEMBER 28, 2011.

*Catherine S. Bernard*, for appellant.
*Craig Fraser, District Attorney*, for appellee.

---

[6] *Oglesby v. State*, 311 Ga. App. 615 (716 SE2d 742) (2011).

[7] (Citations and punctuation omitted.) *State v. Causey*, 246 Ga. App. 829, 832 (1) (b) (540 SE2d 696) (2000).

[8] Id.; *Jones v. State*, 237 Ga. App. 847, 849 (1) (515 SE2d 841) (1999); cf. *Fritzius v. State*, 225 Ga. App. 642, 646-647 (484 SE2d 743) (1997).